UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

ANDREY BEBURISHVILI,

                Plaintiff,

– against –

UNITED STATES, UNITED STATES
DEPARTMENT OF HOMELAND SECURITY,
UNITED STATES CITIZENSHIP AND
IMMIGRATION SERVICES,

                Defendants.

**MEMORANDUM & ORDER**

12-CV-5985 (ERK) (SMG)

KORMAN, J.:

Plaintiff Andrey Beburishvili ("plaintiff") commenced this action against the United States, the United States Department of Homeland Security ("DHS") and the United States Citizenship and Immigration Services ("USCIS," and, collectively with the United States and DHS, the "defendants"), alleging claims of false light invasion of privacy and intentional infliction of emotional distress ("IIED") pursuant to the Federal Tort Claims Act ("FTCA"). 28 U.S.C. § 1346. The tort of "false light invasion of privacy" is defined as "[o]ne who gives publicity to a matter concerning another that places the other before the public in a false light." Restatement (Second) of Torts § 652E (1977). A defendant is subject to liability for such a claim if "(a) the false light in which the other was placed would be highly offensive to a reasonable person, and (b) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed." *Id*. The defendants have filed a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction and a 12(b)(6) motion to dismiss for failure to state a claim.

**BACKGROUND**

Plaintiff formerly held a position as an interpreter with Lionbridge Technologies ("Lionbridge"), a firm that contracts with the USCIS to provide translation services at asylum interviews. Compl. 4, ECF No. 1. This lawsuit arises from an incident that allegedly occurred during an asylum interview on November 25, 2009. Plaintiff alleges that he was requested to monitor by telephone an asylum interview at the New York asylum office. Compl. 3. At the beginning of the interview, the presiding asylum officer ("AO") recognized plaintiff's voice over the telephone as that of an interpreter who "normally worked with Mr. [Joseph] Rose," the attorney representing the asylum applicant at the hearing. Decl. of Deborah T. Mancuso, Ex. A, Serious Incident Report, ECF No. 11-2 ("SIR"). The AO asked plaintiff "if he worked as an interpreter at the New York Asylum Office," and plaintiff responded "that he did." SIR. The AO then asked plaintiff "to identify himself, but he refused to provide his full name," stating only that his name was "Andrey." SIR. In turn, the AO ended the call and requested a new interpreter because plaintiff's failure to disclose his full name and association with Mr. Rose raised "concerns regarding [a] conflict of interest and lack of neutrality on the part of [plaintiff]." SIR.

On November 30, 2009, the AO sent a "Serious Incident Report" to Lionbridge describing the events that had transpired during the November 25 asylum interview. SIR. Consequently, on February 1, 2010, the defendants notified plaintiff that his privileges to interpret interviews at the New York asylum office had been terminated because "he failed to disclose a conflict of interest at multiple asylum interviews." Defs.' Mem. of Law in Supp. of Their Mot. to Dismiss 1-2, ECF No. 11-1 ("Defs.' MTD"). Soon after, plaintiff filed an administrative tort claim with the USCIS claiming that he "suffered injury as a result of DHS and USCIS's intentional and malicious communication and false serious incident report, and

2

requested $500,000 in compensation." Compl. 2. On June 7, 2012, the USCIS denied the claim. Compl. 2.

Subsequently, plaintiff commenced the instant action asserting claims of false light invasion of privacy and IIED pursuant to the FTCA. Compl. 1-3. Plaintiff claims that the allegations made in the incident report cast him in a "negative and false light," which resulted in the loss of his job at Lionbridge and caused him to suffer "a tremendous amount of embarrassment, humiliation and mental agony." Compl. 4. Plaintiff seeks $500,000 in compensatory damages and $500,000 in punitive damages. Compl. 4-5.

## DISCUSSION

### I. Standard of Review

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). "In resolving the question of jurisdiction, the district court can refer to evidence outside the pleadings and the plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Luckett v. Bure*, 290 F.3d 493, 496-97 (2d Cir. 2002).

### II. The FTCA

"The United States, as sovereign, is immune from suit save as it consents to be sued . . . , and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherman*, 312 U.S. 584, 586 (1941). "The doctrine of sovereign immunity is jurisdictional in nature, and therefore to prevail, the plaintiff bears the burden of establishing that [his] claims fall within an applicable waiver." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). The FTCA provides a waiver of the United States's sovereign immunity for

3

> claims against the United States, for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b). This waiver, however, is limited and subject to numerous exceptions. The defendants argue that plaintiff's claims are barred by two of these exceptions, the intentional tort exception and the discretionary function exception. Defs.' MTD 3-6.

### A. The Intentional Tort Exception

The intentional tort exception provides that the FTCA's general waiver of sovereign immunity does not apply to "[a]ny claim arising out of assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights[.]" 28 U.S.C. § 2680(h). "In determining the applicability of the § 2680(h) exception, a court must look, not to the theory upon which the plaintiff elects to proceed, but rather to the *substance* of the claim which he asserts." *Lambertson v. United States*, 528 F.2d 441, 443 (2d Cir. 1976) (emphasis added). Here, plaintiff's claims of false light invasion of privacy and IIED are barred by § 2680(h) because the substance of each claim arises out of a libel claim. Libel is defined traditionally as "[a] defamatory statement expressed in a fixed medium, esp. writing but also a picture, sign, or electronic broadcast." LIBEL, *Black's Law Dictionary* (9th ed. 2009). Plaintiff's claims are based on the allegation that the statements contained in the incident report sent to Lionbridge were "false," and "highly offensive." Compl. 4. Indeed, "[s]uch claims resound in the heartland of the tort of defamation: the injury is to reputation; the conduct is the communication of an idea, either implicitly or explicitly." *Jimenez-Nieves v. United States*, 682 F.2d 1, 6 (1st Cir. 1982). Thus, plaintiff cannot circumvent § 2680(h) merely by dressing up a libel claim as another cause of action that is not expressly

barred by the statute.  *See Philippeaux v. United States*, No. 10 Civ. 6143(NRB), 2011 WL 4472064, *9-*10 (S.D.N.Y. Sept. 27, 2011).

### B. The Discretionary Function Exception

The defendants also argue that the claims are barred by the discretionary function exception to the FTCA.  Defs.' MTD 5-7.  The exception provides that the FTCA's general waiver of sovereign immunity does not apply to "[a]ny claim . . . based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of . . . an employee of the Government, whether or not the discretion involved be abused."  28 U.S.C. § 2680(a).  In *United States v. Gaubert*, the Supreme Court set forth a two-part test for determining whether a challenged government action is protected as a discretionary function. 499 U.S. 315, 322-23 (1991).  First, the Supreme Court held that the exception "covers only acts that are discretionary in nature, acts that 'involv[e] an element of judgment or choice.'"  *Id*. at 322 (quoting *Berkovitz by Berkovitz v. United States*, 486 U.S. 531, 536 (1988)).  This "requirement of judgment or choice is not satisfied if a 'federal statute, regulation or policy specifically prescribes a course of action for an employee to follow.'" *Id*. (quoting *Berkovitz*, 486 U.S. at 536).

Here, the decisions to disqualify plaintiff from the November 2009 asylum interview, to send the Serious Incident Report to Lionbridge, and to terminate plaintiff from his position were not compelled by any statute, regulation or policy.  The only regulation on point, 8 C.F.R. § 208.9 ("Procedure for interview before an asylum officer."), does not mandate such actions. The regulation merely requires the AO presiding over an asylum interview to "verify the identity of any interpreter."  8 C.F.R. § 208.9(c).  Moreover, 8 C.F.R. § 208.9(g) provides that an asylum interview interpreter may not be "the applicant's attorney or representative of record, a witness testifying on the applicant's behalf, nor a representative or employee of the applicant's country

of nationality, or if stateless, country of last habitual residence . . . ." The provision is silent on whether the alleged employee or agent of the applicant's attorney —such as plaintiff— is disqualified from serving as an interpreter if he has a conflict of interest. This is precisely the situation that confronted the AO who presided over the November 29 asylum interview. Thus, the decisions at issue here were discretionary in nature.

Nevertheless, plaintiff argues that the AO's actions were compelled by a provision in § 4 of the Affirmative Asylum Procedures Manual ("AAPM"), which details the protocols for resolving problems with contract interpreters. USCIS, *Affirmative Asylum Procedures Manual* 12-14 (Nov. 2013) ("*AAPM*"); Pl.'s Mem. of Law in Opp'n to Defs.' Mot. to Dismiss 7-8 ("Pl.'s Opp'n"). The provision states:

> If the Asylum Officer experiences problems with the contract interpreter, such as frequent and/or inappropriate interjections, unavailability, absence, or unresponsiveness of the contract interpreter when prompted by the Asylum Officer, the Asylum Officer may request another contract interpreter. *Any difficulty with the contract interpreter should be noted on the interview monitoring call record and brought to the attention of the Asylum Office management, which will in turn notify the [Contracting Officer's Technical Representative ("COTR")].*

*AAPM* 14 (emphasis added). Plaintiff argues the emphasized language demonstrates that the AO's decision in this particular case was "not permissive or discretionary." Pl.'s Opp'n 8. Plaintiff, however, mischaracterizes the procedures required by the provision. The provision simply requires the AO to note any difficulty with the interpreter on the record and then to notify the Asylum Office management. In turn, the Asylum Office management must then notify the COTR, a government employee who "perform[s] functions under the contract [with a third-party] such as review or inspection and acceptance of supplies, services, including construction, and other functions of a technical nature." 48 C.F.R. § 3052.242-72. In his complaint, plaintiff does not challenge the specific procedures described by this provision. Rather, at issue here are the decisions to disqualify plaintiff from the asylum interview, to send the Serious Incident

6

Report to Lionbridge, and to terminate plaintiff from his position. Neither this provision —nor any other provision in the AAPM for that matter— mandates such action. Indeed, the protocols listed in § 4 of the AAPM are irrelevant to the resolution of this case.

The second step of the *Gaubert* test requires that the decision in question be grounded in "considerations of public policy." *Gaubert*, 499 U.S. at 322-23 (quoting *Berkovitz*, 486 U.S. at 537). Because the decisions here were directly related to public policy considerations regarding the avoidance of a conflict of interest on the part of an asylum interview interpreter, the decisions are protected by the discretionary function exception.

## CONCLUSION

The motion to dismiss for lack of subject matter jurisdiction is granted. Because the United States is the only proper defendant in an action under the FTCA, *C.P. Chem. Co. v. United States*, 810 F.2d 34, 37 n.1 (2d Cir. 1987) (citing 28 U.S.C. § 2679(a)), the claims asserted against defendants other than the United States would be dismissed in any event.

**SO ORDERED.**

Brooklyn, New York
August 8, 2014                                /s/_____
                                             Edward R. Korman
                                             Senior United States District Judge